A94A2255. WEBSTER v. WILKINS et al.
(456 SE2d 699)

JOHNSON, Judge.

Cox Enterprises, Inc. d/b/a The Atlanta Journal and The Atlanta Constitution, published a newspaper article concerning the wedding of professional basketball player Jacques Dominique Wilkins and Nicole Berry. Part of the article described the prior personal relationship between Wilkins and Elizabeth Webster, who, after their relationship ended, gave birth to a daughter fathered by Wilkins. In the article, Cox quoted Wilkins as saying, "[Webster] gives women in general a bad name . . . I probably shouldn't say this, but I want to take that kid from her. She's unfit to have a kid." Based on this quote, Webster sued Wilkins and Cox for defamation. The trial court granted summary judgment to Wilkins and Cox, finding, among other things, that the statement is merely an opinion that is not capable of being proven true or false. Webster appeals.

1. Webster contends the trial court erred in ruling that Wilkins' statement is merely an expression of opinion. Webster cites the proposition that "[t]here is no wholesale defamation exemption for anything that might be labeled opinion. To say otherwise would ignore the fact that expressions of opinion may often imply an assertion of objective fact. . . . The pivotal questions are whether [the] statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false." (Citations and punctuation omitted.) *Eidson v. Berry*, 202 Ga. App. 587, 588 (415 SE2d 16) (1992). Webster then reasons that Wilkins' statement that she is not fit to have a child implies an assertion of objective fact which is capable of being proved false because her fitness as a parent could be determined by a court of law pursuant to criteria set forth in OCGA §§ 19-7-1 and 19-7-4.

Webster's reasoning is unpersuasive because implicit in it is the assumption that Wilkins used the word "unfit" in its legal sense and thereby implied some objective facts which make Webster an unfit parent as determined under Georgia law. Having reviewed Wilkins' statement in the context of the entire article, we cannot make this assumption. It is apparent from the context of the article that Wilkins did not use the phrase "unfit to have a kid" in its legal sense or as a legal conclusion, but used it only to express his subjective opinion criticizing Webster's parental abilities. More importantly, the average reader would not have construed Wilkins' statement to be his legal conclusion that pursuant to OCGA §§ 19-7-1 and 19-7-4 Webster is an unfit parent. "In considering whether a writing is defamatory as a matter of law, we look at what construction would be placed upon it by the average reader." (Citations and punctuation omitted.) *Mead v. True Citizen, Inc.*, 203 Ga. App. 361, 362 (417 SE2d 16) (1992). "[T]he courts will not hunt for a strained construction in order to hold the words used as being defamatory." (Citations and punctuation omitted.) *Thomason v. Times-Journal*, 190 Ga. App. 601, 602 (1) (379 SE2d 551) (1989). Webster's reading of Wilkins' words is such a strained construction because the average reader, construing the statement in the context of the entire article, would have taken the statement for what it was, a subjective, hyperbolic opinion that cannot be proved to be true or false and that concerns a matter on which reasonable people might differ; i.e., Webster's parental capabilities.

"[T]he expression of opinion on matters with respect to which reasonable men might entertain differing opinions is not libelous. An assertion that cannot be proved false cannot be held libelous. A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be. However pernicious an opinion may seem, we depend for its

correction not on the conscience of judges and juries but on the competition of other ideas." (Citations and punctuation omitted.) *Kendrick v. Jaeger*, 210 Ga. App. 376, 377-378 (436 SE2d 92) (1993). Because Wilkins' statement was a wholly subjective opinion not capable of proof or disproof, the statement cannot support this defamation action against either Wilkins for saying it or Cox Enterprises for publishing it. See *Elder v. Cardoso*, 205 Ga. App. 144, 145 (1) (421 SE2d 753) (1992); *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (3) (337 SE2d 770) (1985).

2. Even if Wilkins' statement was not merely an opinion, the trial court correctly granted summary judgment to Wilkins and Cox because, contrary to Webster's argument, the oral statement was not slander per se, its publication in the newspaper was not libel per se, and therefore Webster was required to show special damages. A statement may be slanderous per se and not require special damage to support an action if it imputes to another a crime punishable by law, charges a person with having some contagious disorder or with being guilty of some debasing act which may exclude her from society, or makes charges against another in reference to her trade, office or profession. OCGA § 51-5-4. Similarly, "[l]ibel per se consists of a charge that one is guilty of a crime, dishonesty, or immorality." (Citations and punctuation omitted.) *Mead*, supra. Webster makes no claim that the statement is a charge against her trade, office or profession; rather, she complains the statement may imply she is guilty of a crime, a debasing act which might exclude her from society, dishonesty or immorality.

Webster's complaints are without merit. The statement that she is "unfit to have a kid" simply does not rise to the level of imputing any specific crime, debasing act, dishonesty or immorality; to conclude otherwise strains the obvious meaning of the statement. See generally *Meyer v. Ledford*, 170 Ga. App. 245, 246 (1) (316 SE2d 804) (1984). Because the statement is not slander or libel per se, but is merely a derogatory or disparaging remark, special damages must be shown. See *Connell v. Houser*, 189 Ga. App. 158, 160 (4) (b) (375 SE2d 136) (1988).

"The special damages necessary to support an action for defamation, where the words are not actionable in themselves must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value. The loss of income, of profits, and even of gratuitous entertainment and hospitality will be special damage if the plaintiff can show that it was caused by the defendant's words." (Citations, punctuation and emphasis omitted.) *Jamison v. First Ga. Bank*, 193 Ga. App. 219, 222-223 (3) (387 SE2d 375) (1989). In her complaint, Webster has not specified any loss of money due to the statement. Moreover, at her deposition she testified that she has

not sustained any financial or economic damage as a result of the statement. Given Webster's failure to plead or prove any special damages caused by the allegedly defamatory statement, the trial court correctly granted summary judgment to Wilkins and Cox Enterprises.

3. Because of our decisions in Divisions 1 and 2, we need not address Webster's remaining arguments.

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Andrews, Blackburn, Smith and Ruffin, JJ., concur. Beasley, C. J., and Pope, P. J., dissent.*

BEASLEY, Chief Judge, dissenting.

1. The majority holds that it is apparent from the context of the subject newspaper article that Wilkins did not use the phrase "unfit to have a kid" in its legal sense or as a factual statement, and that the average reader would have construed this statement as a hyperbolic opinion that cannot be proved true or false concerning a matter on which reasonable people might differ, i.e., Webster's parental capabilities. I respectfully dissent.

Wilkins is a well-known professional basketball player. Webster met him while standing in line waiting to get into an Atlanta nightclub. This occurred shortly before she began law school at Georgia State University. After dating him, she gave birth to a female child, Chloe. When he refused to assist with maternity expenses, Webster instituted a paternity action against him. HLA blood testing identified him as the probable father, and Wilkins entered into a child-support agreement with Webster.

She later instituted contempt proceedings against him, for noncompliance with the agreement, and then a complaint for sexual battery, which was dismissed. He thereafter filed a complaint against her for malicious prosecution, to which she filed a counterclaim for sexual harassment. Both were dismissed. Webster's filing of the sexual battery complaint against Wilkins was reported in various newspapers throughout the country, and some of these reports made mention of the prior paternity action. The acrimonious dissolution of their relationship, and the attendant litigation, were also reported in the local media.

Wilkins subsequently became engaged to another woman, and he asked the defendant newspaper to write an article concerning his impending marriage. After discussing Wilkins' relationship with Webster, the paternity action, and other litigation between them, the article quotes Wilkins as saying, "She [Webster] gives women in general a bad name . . . I probably shouldn't say this, but I want to take that kid [Chloe] from her. She's unfit to have a kid."

A review of the article shows that it is in no way apparent from its context that Wilkins did not use this phrase either in its factual or

legal sense. Moreover, there is evidence in this case showing that Wilkins in fact had planned to sue Webster for custody of the child and give her to his mother and that the reporter who wrote this article was aware of that.

While it is true that reasonable people might hold differing opinions on any given individual's parental abilities, in this case Webster has presented abundant evidence that she is a very capable and loving parent, and the defendants have presented no evidence that she is not. To the contrary, Wilkins testified that, in fact, he does not know what kind of parent Webster is because he rarely has a chance to see the child. He acknowledged that she "looked pretty healthy" on the few occasions he had seen her. Clearly, Wilkins has not established truth as a defense to Webster's defamation charge, and he is not entitled to summary judgment on this basis. Compare *Pinkston v. City of Albany*, 196 Ga. App. 43, 47 (3) (395 SE2d 587) (1990).

Wilkins' accusatory statement against Webster as a mother explains, without going into detail, why he as father desires to remove the child from her custody. He connotes, by his prefatory remark, that he knows the seriousness of his statement, especially when made to a newspaper reporter instigated and prompted by him to write an article for publication about his marital and family affairs.

Under the law of defamation, if an opinion is expressed without disclosing the underlying factual basis, the opinion is actionable if the opinion implies or creates a reasonable inference that the opinion is justified by the existence of undisclosed defamatory and false facts. *Metcalf v. KFOR-TV*, 828 FSupp. 1515, 1529 (W.D.Okla. 1992), citing the Restatement of Torts, § 566. "The pivotal questions are whether [the] statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false." *Eidson v. Berry*, 202 Ga. App. 587, 588 (415 SE2d 16) (1992).

Innumerable child custody cases in which parental fitness is drawn in issue demonstrate that the assertion that a parent is unfit to have her child can be interpreted as implying defamatory facts about the parent and is capable of being proved true or false. *Perkins v. Courson*, 219 Ga. 611, 624 (2) (135 SE2d 388) (1964) holds, e.g., that a parent's right to child custody may be lost based upon a finding of unfitness where it has been shown "for instance, that the parent is afflicted either mentally or physically to the extent that he cannot provide any care for the child; that he suffers from a serious and contagious disease which would endanger the child; that he has criminal tendencies making it hazardous to expose a child to him; or that he has other such disqualifications not coming within [the Georgia Code]." The Code itself provides that a parent can lose parental power under the law for, among other things, "[f]ailure to provide

necessaries for the child or abandonment of the child . . . or [c]ruel treatment of the child." OCGA § 19-7-1 (b). A parent's right to custody may be lost if, for instance, the child "is being reared under immoral, obscene, or indecent influences which are likely to degrade [her] moral character and devote [her] to a vicious life and it appears . . . that by reason of the neglect, habitual drunkenness, lewd or other vicious habits, or other behavior of the parents . . . , it is necessary for the welfare of the child to protect the child from such conditions." OCGA § 19-7-4.

Wilkins' public statement is that he knew things about Webster which made her unfit to have custody of their daughter. He went further and announced that he as father wanted to deprive the mother of custody. Considering Wilkins' statement about Webster in context, it is not as a matter of law a mere expression of opinion.

2. The trial court also erred in granting summary judgment to Cox.

A publisher who defames a private figure plaintiff may constitutionally be held liable in tort under a standard of ordinary care. *Triangle Publications v. Chumley*, 253 Ga. 179, 180 (1) (317 SE2d 534) (1984). In this action, Webster is not a limited purpose public figure. *Time, Inc. v. Firestone*, 424 U. S. 448 (96 SC 958, 47 LE2d 154) (1976). Thus, the issue is one of negligence, and the standard of conduct is defined by reference to the procedures a reasonable publisher in defendant's position would have employed. *Triangle Publications*, supra at 181.

While doing research for the article, reporter Auchmutey discovered that after Webster filed the paternity action against Wilkins, he falsely stated that he did not know her. He was thus aware of Wilkins' propensity for making false statements about Webster. Auchmutey also interviewed Wilkins' mother, Gertrude Baker. She told him that, as a result of Wilkins' anger toward Webster, he was planning "to go after" Chloe and give her to Baker, but that Baker did not want to raise the child because Baker was too old. Auchmutey was thus aware that when Wilkins stated that he wanted to take the child away from Webster, he meant it.

Auchmutey also spoke to Webster on several occasions before the article was published. He testified that he did not inquire of her or anyone else whether she is in fact a fit parent, essentially because *he* interpreted Wilkins' statement as an expression of his anger rather than a literal accusation that she was not a fit custodian for the child. His focus should have been on how the reader would have interpreted it. In essence, Auchmutey also testified that he interpreted the statement as rhetorical hyperbole. See generally *Fram v. Yellow Cab Co.*, 380 FSupp. 1314, 1329-1330 (19) (W.D. Pa. 1974). The context of the statement, and facts known to Auchmutey and established of record,

wholly belie this characterization.

The evidence in this case presents a triable issue of fact on the question of whether the newspaper was negligent in publishing the allegedly defamatory statement.

3. Webster contends that as a matter of law Wilkins' statement "[s]he is unfit to have a kid," referring to their one-year-old daughter Chloe, and the reason he wants to deprive the mother of custody, constitutes slander actionable per se without proof of special damages.

Subsection (a) of OCGA § 51-5-4 states that slander or oral defamation consists in: "(1) Imputing to another a crime punishable by law; (2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or (4) Uttering any disparaging words productive of special damage which flows naturally therefrom." Webster does not allege the presence of a subsection (4) situation, which requires proof of special damages, but rather that the statement falls into one of the other three categories, where damage is inferred. OCGA § 51-5-4 (b).

Wilkins' statement that Webster "is unfit to have a kid" is not a charge against her in reference to her trade, office, or profession. Under Georgia's parental fitness doctrine, the statement can be interpreted as implying that she has committed a crime punishable by law, such as against the child, or is guilty of some debasing act such as would exclude her from society, such as parental unfitness could. See Division 1, supra. This does not mean that the statement is defamatory as a matter of law. Whether it is depends on what construction would be placed on it by the average reader. *Mead v. True Citizen, Inc.*, 203 Ga. App. 361, 362 (417 SE2d 16) (1992); see *Stalvey v. Atlanta Business Chronicle*, 202 Ga. App. 597, 599 (1) (414 SE2d 898) (1992). Legal definitions are not controlling, *Thuma v. Hearst Corp.*, 340 FSupp. 867, 871-872 (3) (D.Md. 1972), but they are not irrelevant either. Where, as here, the words spoken are capable of having a defamatory per se meaning by intimation or innuendo, whether the words were in fact so understood presents a jury question. See *Southland Corp. v. Garren*, 135 Ga. App. 77, 78 (2, 3) (217 SE2d 347) (1975) (the statement that plaintiff was "fired for shortages" may be found by a jury to have imputed to her a crime), rev'd on other grounds, 235 Ga. 784 (221 SE2d 571) (1976).

4. Webster urges that, as a matter of law, the statement "[s]he is unfit to have a kid" in the context reported constitutes newspaper libel actionable per se without proof of special damages. OCGA § 51-5-2 (a) provides: "Any false and malicious defamation of another in any newspaper, magazine, or periodical, tending to injure the reputation of the person and expose him to public hatred, contempt, or ridi-

cule, shall constitute a newspaper libel."

What is contained in Division 3, supra, pertains here. The words published by the newspaper concerned the father's assessment of the mother as unfit to parent their year-old daughter. Whether this tended to injure Webster's reputation and expose her to public hatred, contempt, or ridicule are questions for the jury. If the jury finds that the words published tended to have this effect, then Webster may recover in accordance with OCGA § 51-5-2 without proof of special damages.

These are all factual matters capable of proof.

I am authorized to state that Presiding Judge Pope joins in this dissent.

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 31, 1995 — ▮▮▮▮▮▮▮▮▮▮

*Herald J. Alexander,* for appellant.
*Warner, Mayoue & Bates, John C. Mayoue, Brady D. Green,* for appellees.